## PATTON v. HAYTER, JOHNSON & CO..

1. If a senior judgment creditor instructs the sheriff to hold up the execution issued thereon, it is fraudulent in law, as against subsequent judgment creditors, and will postpone the lien of his judgment on the real estate of the debtor in favor of junior judgments, upon which executions have issued, and been served, before a second execution is sued out on the elder judgment.

2. A bill of exceptions is to be taken most strongly against the party excepting, and all reasonable presumptions will be indulged by an appellate court in favor of the judgment of a subordinate tribunal.

3. If an alternative state of facts is presented for the determination of the primary court, one of which will sustain, and the other reverse its judgment, it devolves upon the party against whom its decision has been made to negative, in his bill of exceptions, either by positive statement, or by a recital of *all* the evidence, the alternative which supports the judgment.

Error to the Circuit Court of Madison.    Before the Hon. G. D. Shortridge.

In this case, a motion was made to the court for an order to the sheriff, as to the application of a sum of money in his hands, raised from a sale of the real estate of one Fredrick Elgin, against whom the plaintiff and defendants had severally obtained judgments and executions.   It appears by the bill of exceptions found in the record, that the plaintiff in error, on the 26th April, 1841, obtained a judgment by confession against said Elgin, with a stay of execution for six months ; that execution issued on said judgment, and was delivered to the sheriff of Madison county, on the 17th day of November, 1841 ; that said execution has never been returned to the court whence it issued, but has been held up by said plaintiff in error, or is still in the sheriff's hands ; that at the time said execution was delivered to the sheriff, said Elgin was perfectly solvent, having in his possession a considerable amount of real and personal property ; that on the

—— day of June, 1844, the defendants in error obtained a judgment against said Elgin, in the county court of Madison, for $66 36, besides costs, and on the —— day of June, 1845, they recovered judgment against him in the same court for $185 46, besides costs; that executions were regularly issued on each of the judgments, in favor of the defendants in error, and returned "no property;" that on the 21st September, 1847, executions were again issued on each of defendants' judgments, and levied on certain real estate, as the property of said Elgin; that on the 29th November, 1847, after said property had been advertised for sale by virtue of said levy, the plaintiff in error caused an execution to be issued on his said judgment, and on the sale of the property claimed the proceeds thereof. The court, on this state of facts, direct the sheriff to apply the money, first, to the payment of the executions in favor of defendants, and if any remained, to apply it to the execution in favor of the plaintiff in error. To this direction of the court the plaintiff in error excepted, and now assigns it as error.

J. Robinson, for plaintiff in error.

The property of defendant sold by the sheriff was land. Patton's judgment was the oldest. His execution was issued and levied upon the property before it was sold under the junior judgment. The sheriff should have been directed to pay over the proceeds to Patton. Turner v. Lawrence, 11 Ala. 430.

There is nothing in the proof tending to show that Patton's judgment was dormant, or his delay fraudulent.

Ormond, contra.

The judgment was obtained by Patton by confession, from Elgin, in 1841, and execution issued thereon during the same year, and the bill of exceptions states, that the execution has never been returned, or has been held up by order of the plaintiff. Conceding that the true interpretation of the bill of exception is, that Patton caused another execution to be issued in 1847, and placed in the sheriff's hands, this was not done until the levy of the defendant on Elgin's

land, and its advertisement for sale. Under these circumstances, I contend, first, that the execution of Patton had become dormant by his *laches*, whilst the defendant is a vigilant creditor, who has re-issued his execution without the lapse of a term, and is therefore entitled to a preference within the very terms of the decision relied upon on the other side from 11 Ala. 430.

Second, that as Patton's judgment was obtained by *confession*, it is as against a judgment creditor, obtained in the ordinary mode, to be considered fraudulent until the consideration is proved. Roberts on F. Con. 489, and cases cited.

COLLIER, C. J.—By an act passed in 1835, it is enacted, that when any execution shall have been issued on any judgment, &c., within a year and a day after the rendition of such judgment, &c., which shall not have been returned *satisfied in full*, it shall be lawful at any time thereafter to issue execution thereon, without suing out a *scire facias*, or any process to revive the same. *Further*, when an execution shall have been sued out on any judgment, &c., within a year and a day from the rendition thereof, and not returned *satisfied in full*, such judgment, &c., shall not afterwards be presumed to be paid or satisfied, unless payment or satisfaction be entered on the record of the court in which the same shall have been rendered, &c., or unless no execution shall have issued for the space of ten years. Clay's Dig. 206, § 28.

The terms of this statute are too explicit to leave room for controversy. So far from requiring the execution issued within a year and a day to be returned "no property found," or other equivalent return to be made, it is expressly declared, that the fact of satisfaction must be affirmed by the return ; and if the execution thus sued out is not returned *satisfied in full*, it is competent to issue another, any time within ten years. It may then be conceded, that as the time prescribed by the statute had not elapsed between the issuing of the first and second execution of the plaintiff in error, the latter was regularly sued out.

Upon this hypothesis, the question arises, whether the second execution derived any additional potency from the first, so as to continue the lien of the judgment from the period of

its rendition. It has been repeatedly held, by this and other courts, that if an execution is delayed by the act of the plaintiff, it never acquires a lien upon the goods of the debtor, as against one of a junior date ; or if it does, the lien is gone as soon as the interference of the plaintiff commences, and will only become operative from the time the sheriff is required to execute its mandate. See Wood v. Gary et al. 5 Ala. R. 43. In the opinion delivered by myself in that case, it is said, "the process is mandatory, and requires the officer to make a sum of money of the goods and chattels, &c. of the defendant, and have the money at a term therein designated, to render to the plaintiff, together with the writ, &c.; if the course of law is arrested by the direction or approval of the plaintiff, during all that time nothing is done towards enforcing the payment of the judgment, and the effect in point of fact, is the same as if no execution had issued. The legal presumption is, that the plaintiff intended to favor the defendant by suing out his execution ; while he would obtain a lien prior to others, he would, under its protection, secure to the defendant the enjoyment of his property against subsequent executions. No matter how humane and benevolent the motives which might prompt to such a course, they would not relieve the elder execution from being fraudulent in law." An execution which is fraudulent as respects those subsequently issuing, is void, and inoperative to affect rights which otherwise arise under them. Being fraudulent as against a junior execution, it cannot have the effect to continue the lien of the judgment as against subsequent judgment creditors, whose executions have been levied before a second *fieri facias* was sued out. Its efficiency being paralized by the act of the plaintiff, it cannot prejudice the diligent creditor, who has caused the property of the debtor to be first seized ; but as it respects him, it is as if no execution had ever issued.

It has been supposed from what was said *arguendo* in the opinion of a majority of the court, in Wood v. Gary et al. that the interference of the plaintiff should be *fraudulent in fact*, in order to impair the lien of the suspended execution ; and this conclusion, it is contended, is enforced by the Br. Bank at Huntsville v. Robinson, 5 Ala. Rep. 623, and Tur-

ner v. Lawrence, 11 Ala. Rep. 426. Attention to the facts of these cases will show, that although some stress may seem to be laid upon the absence of fraud, as a fact, what was said upon the point was not material, and did not enter into the decision of the cases, and cannot therefore be regarded as authoritative, even if it be in conflict with the view we have taken of the law.

If then, the lien of first the execution was destroyed by the direction of the plaintiff to hold it up, no consequences prejudicial to the defendants in error would result from its having issued. But it would effect no purpose as against them— being as we have seen fraudulent in law, and of consequence void. In determining the superiority of the respective liens, the plaintiff in error stands precisely in the predicament as if no execution had issued in his favor until the levy of the defendant's *fi. fa's.* This being the case as against the defendants, his judgment would be dormant and inoperative by the failure to sue out a valid execution within the year and a day, and though his judgment was prior in time, its collection would be postponed. See Conard v. The Atlantic Insurance Co. 1 Pet. Rep. 386; United States v. Morrison, 4 Pet. Rep. 124; Porter v. Cocke, Peck's Rep. 30; Moliere v. Noe, 4 Dall. Rep. 450; Kemper v. Hock, 1 Watts' Rep. 9; U. S. Bank v. Winston's Ex'r, 2 Brockb. Rep. 252; Jackson v. Knight, 4 Watts & Sergt. Rep. 412; Burney v. Boyett, 1 How. Rep. (Miss.) 39; Grand Gulph v. Henderson, 5 Ib. 292; Michie v. Planters' Bank, 4 Ib. 178; Lucas v. Stewart, 3 Smedes & Marsh. Rep. 231; Pickett v. Doe, 5 Ib. 470; Mansony *&* Hurtell v. The U. S. Bank and Assignees, 4 Ala. Rep. 735.

It is stated in the bill of exceptions, that the first execution sued out by the plaintiff in error, has never been returned, "but was held up by the plaintiff, or is still in sheriff's hands." If we are to understand by this, that the proof showed either that the plaintiff was active in preventing the mandate of his *fieri facias* from being executed, or that the sheriff *mero motu* failed to make the money thereon, our conclusion must be the same as if the positive interference of the plaintiff had been proved. It devolved upon the circuit court to determine which of these alternative facts was es-

tablished, and we must intend, that that court supposed the first at least was proved, as its existence was necessary to the judgment we are called on to revise. If this hypothesis be false, it should have been negatived by the bill of exceptions, either by a positive statement, or a recital of all the evidence submitted. It is well settled, that a bill of exceptions shall be taken most strongly against the party excepting, and that all reasonable presumptions shall be indulged by an appellate court in favor of the judgment of a subordinate jurisdiction. Under the influence of these principles we may rest our conclusion upon this point. It remains but to add, that the judgment of the circuit court is affirmed.

DARGAN, J.—Although I agree with the court, that the judgment in this case should be affirmed under the facts, yet I cannot assent to the proposition, that the lien of an older judgment creditor, on the real estate of the defendant, will be postponed in favor of a junior, on the ground alone, that the sheriff has been instructed by the plaintiff in the elder judgment, not to sell under the execution issued thereon, or because the plaintiff has held it up, and declined to have the land sold. If the plaintiff in the older judgment has a valid execution in the hands of the sheriff, at the time of the sale under the junior judgment, he is certainly entitled to have his older lien satisfied, and has priority over the junior judgment creditor. And although the plaintiff may have, from time to time, previously ordered a stay of the sale, or a return of the execution, this, in my opinion, will not postpone his lien on the real estate of the defendant, in favor of a junior judgment creditor.